Jonathan L. Flaxer
Michael S. Weinstein
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, NY 10022
(212) 907-7300
Attorneys for Aaron Muschel

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 04-13810 (JMP) |
| BROADWALL AMERICA, INC. | : | |
| Debtor. | : | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 05-10616 (JMP) |
| BRAM WILL EL LLC. | : | |
| Debtor. | : | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 05-10617 (JMP) |
| WILLIAM MUSCHEL, LLC. | : | |
| Debtor. | : | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| BROADWALL AMERICA, INC. | : | Adv. Pro. Nos.08-01788 (JMP) |
| | : | 08-01789 (JMP) |
| Plaintiff, | : | 08-01790 (JMP) |
| - against - | : | |
| | : | |
| BRAM WILL EL LLC, WILLIAM MUSCHEL, LLC, | : | |
| Defendants. | : | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| AARON MUSCHEL, | : | |
| Appellant, | : | Case Nos.  11-civ-00554 (AKH) |
| - against - | : | 11-civ-00683 (AKH) |
| | : | 11-civ-00684 (AKH) |
| BROADWALL AMERICA, INC., BRAM WILL | : | 11-civ-00685 (AKH) |
| EL LLC, WILLIAM MUSCHEL, LLC, | : | 11-civ-00686 (AKH) |
| MORDECHAI MUSCHEL, | : | 11-civ-00687 (AKH) |
| Appellees. | : | |

-------------------------------------------------------------x

## BRIEF OF APPELLANT
## AARON MUSCHEL

527279.2

## TABLE OF AUTHORITIES
### CASES

*Broadwall America, Inc. v. Bram Will El*, LLC, 776 N.Y.S. 2d 483 (App. Div. 2004) ................. 6

*Broadwall America, Inc. v. Bram Will El, LLC (In re Broadwall America, Inc.)*, Case No. 04-13810, Dkt. Nos. 148, 149 (Bankr. S.D.N.Y. Mar. 23, 2005) ............................................... 6

*Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1071 (2d Cir. 1983) .................................................................................................................. 21

*Commodities Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985) .......................... 17

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ..................................... 13

*Fischer v. Pereira (In re 47-49 Charles St. Inc.)*, 209 B.R. 618 (S.D.N.Y. 1997) ........................ 10

*Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson Entertainment Group, Inc.)*, 292 B.R. 415 (B.A.P. 9th Cir. 2003) ........................................... 21

*In re A. Tarricone, Inc.*, 286 B.R. 256 (Bankr. S.D.N.Y. 2002) ..................................................... 15

*In re Atlanta Packaging Products, Inc.*, 99 B.R. 124 (Bankr. N.D. Ga. 1988) .............................. 18

*In re Bakalis*, 220 B.R. 525 (Bankr. E.D.N.Y. 1998) ..................................................................... 18

*In re Bidermann Industries U.S.A., Inc.*, 203 B.R. 547 (Bankr. S.D.N.Y. 1997) ........................... 14

*In re Boston Generating, LLC,* 440 B.R. 302 (Bankr. S.D.N.Y. 2010) .......................................... 22

*In re Centennial Textiles, Inc.*, 227 B.R. 606 (Bankr. S.D.N.Y. 1998) .......................................... 15

*In re Chateaugay*, 973 F.2d 141 (2d Cir. 1992) ............................................................................. 21

*In re CIS Corp.,* 142 B.R. 640 (S.D.N.Y. 1992) ......................................................................... 1-2

*In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499 (Bankr. S.D.N.Y. 1991) ................... 10

*In re Garnett*, 303 B.R. 274 (E.D.N.Y. 2003) ................................................................................ 2

*In re Hydronic Enterprises, Inc.*, 58 B.R. 363 (Bankr. D.R.I. 1986) ............................................. 10

*In re Ira Haupt & Company*, 304 F. Supp. 917 (S.D.N.Y. 1984) ............................................ 11, 14

*In Re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007) ................................................. *passim*

*In re Lar Dan Enterprises, Inc.*, 221 B.R. 93 (Bankr. S.D.N.Y. 1998) .................................... 20-21

*In re Lion Capital Group*, 49 B.R. 163 (Bankr. S.D.N.Y. 1985) ............................................ 11-12

*In re Matco Electronics Group, Inc.*, 287 B.R. 68 (Bankr. N.D.N.Y. 2002)...........................14, 16

*In re Moore*, 608 F.3d 253 (5th Cir. 2010) .................................................................................21

*In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358 (Bankr. S.D.N.Y. 2002).......... 11-12, 14

*In re Nightlife Enterprises, L.P.*, 2010 WL 5265128 (Bankr. S.D.N.Y. July 26, 2010)...............22

*In re OptInRealBig.Com*, 345 B.R. 277 (Bankr. D. Colo. 2006)...................................................19

*In re Philadelphia Athletic Club, Inc.*, 15 B.R. 60 (Bankr. E.D. Pa. 1981)....................................17

*In re Present Company*, 141 B.R. 18 (Bankr. W.D.N.Y. 1992) ....................................................14

*In re Refco*, 505 F.3d 109 (2d Cir. 2007).......................................................................................2

*In re Remsen Partners, Ltd.*, 294 B.R. 557 (Bankr. S.D.N.Y. 2003) ...................................... 10-11

*In re Ridgemour Meyer Properties, LLC*, 413 B.R. 101 (Bankr. S.D.N.Y. 2008) .................15, 20

*In re S.N.A. Nut Company*, 186 B.R. 98 (Bankr. N.D. Ill. 1995).................................................18

*In re Telcar Group, Inc.*, 363 B.R. 345 (Bankr. E.D.N.Y. 2007)...........................................12, 14

*In re West Delta Oil Company*, 432 F.3d 547 (5th Cir. 2005)......................................................17

*In re W.T. Grant Co.*, 699 F.2d 599 (2d Cir. 1983) .....................................................................10

*Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996) .......................................................21

*New York Typographical Union No. 6. v. Maxwell Newspapers, Inc. (In re Maxwell Newspapers, Inc.)*, 981 F.2d 85 (2d. Cir. 1992).........................................................................1

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) .................................................................................... 10-12

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).....................................................................13

*Wolf v. Weinstein*, 372 U.S. 633 (1963)......................................................................................17

## STATUTES

11 U.S.C. § 1112(b) ...................................................................................................... 19-20

11 U.S.C. § 363(b) ...............................................................................................................21

Fed. R. Bankr. P. 9019(a) ....................................................................................................10

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

JURISDICTION ................................................................................................... 1

ISSUES PRESENTED ......................................................................................... 1

STANDARD OF REVIEW ................................................................................... 1

STATEMENT OF THE CASE ............................................................................. 2

STATEMENT OF FACTS ................................................................................... 5

RELIEF SOUGHT ............................................................................................... 9

LEGAL ARGUMENT ......................................................................................... 10

I.   THE COURT ABUSED ITS DISCRETION IN APPROVING THE SETTLEMENT
     ABSENT A SUFFICIENT RECORD AND ABSENT CONSIDERATION OF THE
     RELEVANT FACTORS ................................................................................ 11

     A.  The Record Lacks Any Explanation of the Merits, or Benefits of, the Adversary
         Proceeding (Iridium Factors "a," "b," and "f") ......................................... 12

     B.  The Stipulation and the Sale Were Not the Result of Arms Length Bargaining
         (Iridium Factor "h") ................................................................................ 14

     C.  The Stipulation Includes Expansive Releases for Non-Debtors
         (Iridium Factor "g") ................................................................................ 16

     D.  The Bankruptcy Court Disregarded the Interests of Creditors and Equity-Holders
         (Iridium Factor "c") ................................................................................ 16

II.  THE 9019 MOTION FAILS TO SET FORTH "CAUSE" TO DISMISS THE
     BANKRUPTCY CASES ............................................................................... 19

III. THE BANKRUPTCY COURT ERRED IN EXERCISING ITS JURISDICTION TO
     APPROVE THE SALE WITHOUT CONSIDERING SECTION 363 OF THE
     BANKRUPTCY CODE .................................................................................. 21

IV.  THE DEBTORS LACKED AUTHORITY TO ENTER INTO THE STIPULATION .... 23

CONCLUSION .................................................................................................... 24

i

## JURISDICTION

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1).

## ISSUES PRESENTED

I.    Whether the Bankruptcy Court erred in approving the stipulation of settlement in the absence of an adequate record and/or without determining whether the settlement was "fair and equitable" or "in the best interest of the estates" pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure?

II.    Whether the Bankruptcy Court erred in dismissing the bankruptcy cases pursuant to 11 U.S.C. § 1112 in the absence of an adequate record and/or without identifying any appropriate "cause" for dismissal, or alternatively, based upon a previously filed motion to dismiss that did not identify sufficient "cause" to dismiss due to factual circumstances described therein being no longer applicable at the time of the dismissal?

III.    Whether the Bankruptcy Court erred in granting relief beyond and/or extraneous to dismissal of the bankruptcy cases, including approving the post-dismissal sale of assets without an appropriate sale procedure pursuant to 11 U.S.C. §363?

IV.    Whether the Bankruptcy Court erred in concluding that William Muschel, LLC and Bram Will El LLC had authority to enter into the stipulation approved by the Bankruptcy Court?

## STANDARD OF REVIEW

Questions of law are reviewed *de novo*. *New York Typographical Union No. 6. v. Maxwell Newspapers, Inc. (In re Maxwell Newspapers, Inc.)*, 981 F.2d 85, 89 (2d Cir. 1992). Mixed questions of law and fact are reviewed *de novo*. *In re CIS Corp.*, 142 B.R. 640, 641

(S.D.N.Y. 1992). However, presuming that the Bankruptcy Court applied the appropriate

standard for approving a settlement pursuant to Rule 9019, its decision is subject to an "abuse of

discretion" review. *In re Refco*, 505 F.3d 109, 116 (2d Cir. 2007). Findings of fact are reviewed

for clear error. *See In re Garnett*, 303 B.R. 274, 276 (E.D.N.Y. 2003) (quoting Fed. R. Bankr. P.

8013) ("The court's 'finding[s] of fact, whether based on oral or documentary evidence, shall not

be set aside unless clearly erroneous ....").

## STATEMENT OF THE CASE

These appeals arise out of an order dated on or about December 1, 2010 (the "Order")[1] in

which the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court") approved the joint motion (the "9019 Motion")[2] of Broadwall America,

Inc. ("Broadwall"), Bram Will El LLC ("Bram Will"), and William Muschel, LLC ("WM LLC,"

and collectively with Bram Will, the "Debtors") for approval of a stipulation (the "Stipulation")

under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and

dismissal of the Debtors' bankruptcy cases pursuant to section 1112 of title 11 of the United

States Code (the "Bankruptcy Code") over the objection of two parties, one of which is Aaron

Muschel ("A. Muschel"). By approving the Stipulation, the Bankruptcy Court also approved the

sale of the Debtors' assets and broad releases of non-debtor third parties contained in the

Stipulation.

The issues giving rise to the proceedings below and this appeal relate to the various real

properties that had been acquired by the late William Muschel. Two of those properties, located

---

[1] Order Approving Stipulation and Order Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code, Dismissing Bankruptcy Cases & Granting Related Relief," Case No. 04-13810, Dkt. No. 229; Case No. 05-10616, Dkt. No. 137; Case No. 05-10617, Dkt. No. 136; Adv. Pro. No. 06-01788, Dkt. No. 64; Adv. Pro. No. 06-01789, Dkt. No. 21; Adv. Pro. No. 06-01790, Dkt. No. 21.

[2] Joint Motion for Approval of Proposed Stipulation and Order Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code, Case No. 04-13810, Dkt. No. 215; Case No. 05-10616, Dkt. No. 124; Case No. 05-10617, Dkt. No. 125; Adv. Pro. No. 06-01788, Dkt. No. 54.

at 734 Broadway, New York, New York and 736 Broadway, New York, New York (collectively, the "Properties"), the former of which is owned by Bram Will and the latter of which is owned by WM LLC, were the subject of an option sale contract (the "Option Contract")[3] entered into in 2002 with Broadwall America, Inc. ("Broadwall"). Under the Option Contract, Broadwall was granted an option to purchase the Properties. As described in greater detail below, the Option Contract became the subject of a series of disputes and litigations in the New York State Courts as well as in the Bankruptcy Court. More recently, Mordechai Muschel ("M. Muschel"), one of the three sons of the late William Muschel, on behalf of the Debtors, purported to enter into a new contract with Gary Barnett ("Barnett"), the principal of Broadwall, pursuant to which the Option Contract is terminated and the Properties are sold to Barnett for substantially less than the amount contemplated under the Option Contract. In doing so, M. Muschel also negotiated the satisfaction of a personal debt in the amount of $750,000 that he owed to Barnett. This new contract was then made the subject of the 9019 Motion, pursuant to which approval of the sale was sought under the guise of a "settlement" of long-pending litigation that had been commenced by Broadwall.

In granting the 9019 Motion, the Bankruptcy Court failed to address, let alone satisfy, any of the well developed legal and factual standards for the granting of such relief. In so doing, the Bankruptcy Court disregarded the interests of and duty to the Debtors' bankruptcy estates (the "Estates"), ignored very troubling *indicia* of self-dealing and breaches of duty, and failed to consider factors demonstrating that the settlement embodied in the Stipulation (the "Settlement") was contrary to the interests of the Estates.

---

[3] Motion For an Order, Pursuant to 11 U.S.C. §§105(a) and 365(a), and Rule 6006 of the Federal Rules of Bankruptcy Procedures, (A) Authorizing Debtor to Assume an Executory Contract with Bram Will El LLC and William Muschel, LLC, (B) Directing an Immediate Closing Under the Executory Contract, and (C) Granting Other and Further Related Relief, Exhibit A, Case No. 04-13810, Dkt. No. 9.

With respect to the Rule 9019 relief, the Bankruptcy Court was presented with a wholly insufficient record to evaluate whether the Settlement was fair and equitable based on the well-established factors used in this Circuit. There was little to no presentation, discussion or analysis of either the relative merits of the Adversary Proceeding sought to be resolved or of the benefits of the Settlement; indeed there was neither discussion of what the Adversary Proceeding being settled was about, nor identification of any benefit to be received by the Estates (in fact, there was none). Lastly, there was little to no consideration of the nature and breadth of the releases contained in the Stipulation.

The Settlement likewise disregards the interests of creditors and equity-holders; rather, the only interests considered and sought to be protected were those of parties with adverse interests: (i) M. Muschel, a self-interested insider, and (ii) the Debtors' adversary in the Adversary Proceeding. In fact, A. Muschel presented circumstances demonstrating that the transaction was not arms-length, and was hopelessly infected by self-dealing and breaches of duty: factors fatal to Rule 9019 approval. In essence, Broadwall was gifted the reduction in purchase price it had been denied under the State Court Ruling (defined below), M. Muschel got relieved of a $750,000 debt to Broadwall's principal, and the Estates suffered dollar-for-dollar damages in order to pay for these improper gifts.

The Bankruptcy Court also erred by dismissing the Debtors' bankruptcy cases pursuant to Bankruptcy Code Section 1112 without engaging in any analysis of the relevant statutory factors. The Bankruptcy Court's abuses of discretion are even clearer considering that the Movants (collectively, the Debtors and Broadwall) had the burden on these issues.

Further, because the Debtors sought approval of the sale of the Properties, it was necessary to also seek relief under Section 363(b) of the Bankruptcy Code, which specifically

governs the use, sale or lease of property of the estate. No such relief was sought, however, yet the Bankruptcy Court nevertheless approved the sale without considering Section 363 or any of the well-developed legal standards justifying approvals of the sale of assets. Antithetical to those standards are (i) the failure to market or maximize the value of the Properties, and (ii) the fact that the sale was infected by non arms-length insider self-dealing. Thus, consideration of those standards would have made approval of the sale impossible.

Finally, the Movants carried the burden of establishing that the Debtors possessed authority to enter into the Stipulation. Once the lack of authority issue was raised, it was incumbent upon the Movants to establish the manner in which the entities were authorized to approve the transaction, particularly in light of the fact that the transaction was out of the ordinary course of business, *i.e.*, selling off essentially all of the LLC's assets. However, no such record was presented to the Bankruptcy Court.

So complete was the dispensing with the requirements of the Bankruptcy Code and Bankruptcy Rules, and so complete was the abdication of the interests of the Estates in favor of a self-interested insider, that the Bankruptcy Court's Order granting of the 9019 Motion constituted abuse of discretion, the Order should be reversed, and the matter should be remanded to the Bankruptcy Court.

## STATEMENT OF FACTS

Upon information and belief, Bram Will is owned by the decedent estate of William Muschel a/k/a Wilhelm Muschel (the "Decedent Estate"), and WM LLC is owned in four equal shares by the Decedent Estate, and by the late William Muschel's three sons – A. Muschel, M. Muschel, and Reuben Muschel ("R. Muschel"). A. Muschel, M. Muschel and R. Muschel are the executors of the Decedent Estate. The Debtors asserted at the Hearing that the will of

William Muschel requires two of the three executors in order to act on behalf of the Decedent Estate.[4]

In 2002, Bram Will and WM LLC entered into the Option Contract with Broadwall whereby those entities granted to Broadwall an option to purchase the Properties for $13,000,000 by making a certain deposit within a stated period of time. Later that year, Broadwall sued the Debtors in New York State Supreme Court (the "Supreme Court") seeking a reduction in the purchase price based on alleged misrepresentations (the "State Court Action"). The Supreme Court denied a reduction of the purchase price, and this decision was affirmed on appeal.[5] During the pendency of the State Court Action, Broadwall filed a petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

After granting Broadwall's motion to assume the Option Contract, the Bankruptcy Court by a decision and order dated March 23, 2005 (the "Referral Decision")[6], referred to the Supreme Court the issue of whether Broadwall, under the Option Contract, was entitled to compel the Debtors to close the sale of the Properties under the Option Contract, since the issue was purely one of State law and the Supreme Court was the "perfect forum" to decide the issue.[7] On January 20, 2005, the Bankruptcy Court entered an order confirming Broadwall's First Amended Chapter 11 Plan of Reorganization.

---

[4] Transcript from H'rg on 11/2/2010 ("Transcript" or "Tr."), Case No. 04-13810, Dkt. No. 236, at 5.

[5] *Broadwall America, Inc. v. Bram Will El, LLC*, 776 N.Y.S. 2d 483 (App. Div. 2004)

[6] Decision Regarding Debtor's Motion to Assume an Executory Contract, This Court's Declaratory Order Entered in the Adversary Proceeding, and Granting Other Related Relief, Case No. 04-13810, Dkt. Nos. 148, 149, Adv. Pro. No. 04-04401, Dkt. Nos. 18, 19. The Honorable Cornelius Blackshear, since retired, was the judge appointed to the Debtors' bankruptcy cases at that time.

[7] Referral Decision, at 10.

While the State Court Action was pending, on February 3, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 the Bankruptcy Code with the Bankruptcy Court, and continued to operate as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On November 23, 2005, the Supreme Court granted summary judgment in favor of Broadwall and held that the Debtors were required to close on the Option Contract. The Debtors appealed, and in a decision dated September 21, 2006, the Appellate Division, First Department, reversed and determined that the Debtors had no obligation to close under the Option Contract due to the fact that Broadwall's tender of the downpayment required to exercise the purchase option was untimely for the reason that it was tendered after an injunction staying the deadline to make such tender had been vacated (the "State Court Ruling").[8]   After this decision, on or about October 10, 2006, Broadwall brought three adversary proceedings (collectively, the "Adversary Proceeding") seeking to somehow have the Bankruptcy Court vacate the State Court Ruling, abide by the *reversed* decision of the Supreme Court, and enforce the Option Contract such that the tender of the downpayment would be deemed timely and the Debtor's would be required to close on the sale of the Properties to Broadwall for $13 Million.

While the Debtors' bankruptcy cases were pending, the three brothers entered into arbitration before the Rabbinical Court (the "Beth Din") to resolve disputes regarding the various properties and assets of the Decedent Estate. Upon information and belief, in 2007, the three

---

[8] Application for and Affidavit in Support of Motion for a Preliminary Injunction and Temporary Restraining Order, Exhibit A, Adv. Pro. No. 06-01788, Dkt. No. 2. In the State Court Ruling, the Appellate Division noted that

> Plaintiff's dissatisfaction with the transaction did not afford a basis for seeking to modify the contract to include a reduction in the purchase price. [P]laintiff's sole remedy in the event defendants were unable to convey title or grounds existed for refusing to consummate the purchase was to accept such title as defendants were able to convey…was limited to either exercising the purchase option and paying the remaining $600,000 into escrow or canceling the contract and recovering the initial down payment.

brothers signed a letter agreement regarding the assets of the Decedent Estate, and such

agreement was approved by the Beth Din (the "Award"). Upon information and belief, at some

point in 2009, the Beth Din reconvened to reconsider certain elements of the Award. As a result

of such further proceedings, the Beth Din revised elements of the Award, determined that M.

Muschel should receive the interests in the two Debtor entities not already held by him, but only

after their bankruptcy cases were dismissed, and that M. Muschel would have to "reimburse the

heirs' account by the amount of $1,827,000..." (the "Disputed Ruling"). The Award was not

submitted to the Bankruptcy Court, but a copy of the Disputed Ruling was attached to the 9019

Motion. [9]

In February 2010[10], M. Muschel, purportedly on behalf of the Debtors, signed the

Stipulation with Broadwall that, among other things, provided for the sale of the Properties to

Broadwall for $11 million, including $750,000 that represented forgiveness of M. Muschel's

personal debt to Gary Barnett ("Barnett"), Broadwall's principal. The Stipulation also provides

for broad general releases of Barnett and M. Muschel, dismissal of the Debtors' bankruptcy

cases, and termination of the Option Contract. Thus, the effective purchase price is $10,250,000,

which is $2,750,000 less than the purchase price under the Option Contract that, in the Adversary

Proceeding, Broadwall vigorously sought to enforce.[11]

On or about June 11, 2010, the Debtors filed a motion seeking to dismiss their respective

bankruptcy cases (the "Dismissal Motion"), but not as a result of the Settlement. Rather, the

---

[9] Stipulation, in Exhibit A thereto, Case No. 04-13810, Dkt. No. 215; Case No. 05-10616, Dkt. No. 124; Case No. 05-10617, Dkt. No. 125; Adv. Pro. No. 06-01788, Dkt. No. 54. A. Muschel is currently challenging the confirmation of the Disputed Ruling in a parallel proceeding in New York State Court, and as of the date hereof, the award has not been confirmed.

[10] The Stipulation is dated "February ___, 2010."

[11] A condition to closing the sale of the Properties is entry of a final order from the Bankruptcy Court. Upon information and belief, the closing has not occurred.

Dismissal Motion requested dismissal because the Debtors, although allegedly *unable* to reach a settlement with Broadwall, were willing to consent to Broadwall's enforcement of the Option Contract at $13 Million, as demanded by Broadwall in the Adversary Proceeding.[12]  At the time of the 9019 Motion, the Dismissal Motion was pending in the Bankruptcy Court, but had not been noticed for a hearing.

On or about September 20, 2010, the Debtors and Broadwall filed the 9019 Motion, which requested the Court to approve the Stipulation, which was attached to the 9019 Motion as Exhibit A.  Attached as Exhibit C to the 9019 Motion is the August 4, 2010 sale agreement (the "Sale Agreement") of the Properties by the Debtors to Extell Development Co. ("Extell"), a Barnett-controlled entity.  The 9019 Motion makes no mention of the Dismissal Motion, nor does it explain how the filing of the 9019 Motion, the Stipulation or the Sale Agreement, had been authorized.

On November 2, 2010, the Bankruptcy Court held a hearing (the "Hearing") on the 9019 Motion.  On or about December 1, 2010, the Bankruptcy Court entered the Order granting the 9019 Motion in each Bankruptcy Case and Adversary Proceeding.  As a result of such Order, the Adversary Proceeding was dismissed and the Bankruptcy Cases were closed.

## RELIEF SOUGHT

Muschel seeks reversal of the Order and remand to the Bankruptcy Court for proceedings consistent with such reversal.

---

[12] The Dismissal Motion never mentions the Stipulation, even though it purportedly had been executed five months earlier.

## LEGAL ARGUMENT

Bankruptcy Rule 9019(a), which governs approval of compromises and settlements of claims, provides, in pertinent part that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

This rule empowers the bankruptcy court to approve a proposed compromise or settlement "if [it is] in the best interests of the estate." *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Approval of a proposed compromise or settlement is within the sound discretion of the Court. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, *reh'g denied,* 391 U.S. 909 (1968); *In re W.T. Grant Co.,* 699 F.2d 599 (2d Cir.), *cert. denied sub nom., Cosoff v. Rodman,* 464 U.S. 822 (1983); *Fischer v. Pereira (In re 47-49 Charles St. Inc.),* 209 B.R. 618, 620 (S.D.N.Y. 1997). In order to be approved, a settlement cannot "fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. at 505 (citation omitted). The movant bears the burden of making a *prima facie* showing that each element, as discussed below, has been satisfied. *See In re Remsen Partners, Ltd.,* 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2003) (citing *In re Hydronic Enter., Inc.,* 58 B.R. 363, 365 (Bankr. D.R.I. 1986)).

The Second Circuit has set forth factors under which settlements are evaluated to determine if they are fair and equitable. *See In re Iridium Operating LLC,* 478 F.3d 452, 462 (2d Cir. 2007). These factors include:

a.   The balance between the likelihood of the plaintiff's or the defendant's success should the case go to trial as compared

with the benefits of the settlement without the expense and
delay of a trial;

b.     The prospect of a complex and protracted litigation if the
settlement is not approved;

c.     The paramount interests of the creditors, including the
proportion of creditors who do not object to, or who
affirmatively support, the proposed settlement;

d.     Whether other parties in interest support the settlement;

e.     The competency and experience of counsel supporting the
settlement;

f.     The proposed benefits to be received;

g.     The nature and breadth of releases to be issued as a result
of the settlement; and

h.     The extent to which the settlement is truly the product of
arms' length bargaining and not the product of fraud or
collusion (collectively, the "Iridium Factors").

*In re Iridium Operating LLC*, 478 F.3d at 462.

## I.     THE COURT ABUSED ITS DISCRETION IN APPROVING THE SETTLEMENT ABSENT A SUFFICIENT RECORD AND ABSENT CONSIDERATION OF THE RELEVANT FACTORS

The Bankruptcy Court cannot just rubber stamp the recommendation of the Debtors. *See*

*In re Remsen Partners, Ltd.*, 294 B.R. at 565. In order for the Bankruptcy Court to have

approved the Settlement, it needed a sufficient factual record that supported approval. *See In re*

*Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1984) ("[T]here must be factual proof as to

what was considered by the referee in arriving at his conclusion."). The Bankruptcy Court was

required to make a "full and fair assessment of the wisdom of the proposed compromise." *In re*

*Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 362 (Bankr. S.D.N.Y. 2002) (quoting *TMT*

*Trailer Ferry*, 390 U.S. at 424-25). "Where a facially significant cause of action is glossed over

and key facts relevant to others are not presented even in summary fashion," the Bankruptcy

Court should not approve a settlement under Rule 9019. *See In re Lion Capital Group*, 49 B.R.

163, 189 (Bankr. S.D.N.Y. 1985). Although not required to conduct a "mini-trial" in order to

approve a settlement, *see In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. at 362, "in making

such a determination, the bankruptcy court should apprise itself 'of all facts necessary for an

intelligent and objective opinion of the probabilities of ultimate success should the claim be

litigated' and should review 'all other factors relevant to a full and fair assessment of the wisdom

of the proposed compromise.'" *In re Telcar Group, Inc.*, 363 B.R. 345, 352-53 (Bankr.

E.D.N.Y. 2007) (quoting *TMT Trailer Ferry*, 390 U.S. at 424-25).

It is submitted that, here, adherence to the foregoing requirements was particularly

important since the 9019 Motion failed in all respects to address any of the relevant factors.

### A. The Record Lacks Any Explanation of the Merits, or Benefits of, the Adversary Proceeding (Iridium Factors "a," "b," and "f")

Among the factors to be considered in approving a settlement under Rule 9019 are (i)

"the balance between the likelihood of the plaintiff's or the defendant's success should the case

go to trial as compared with the benefits of the settlement without the expense and delay of a

trial, (ii) the prospect of complex or protracted litigation if these settlement is not approved, and

(iii) the proposed benefits to be received. *In re Iridium Operating LLC*, 478 F.3d at 462. Both

the 9019 Motion and the record of the Hearing, however, are devoid of any analysis, or even

discussion of the relative merits of the Adversary Proceeding, the extent of litigation thereof, or

the benefits of the Settlement. Absent such analysis, it was error to approve the Stipulation.

The foregoing is exacerbated by the fact that, had the Court considered this crucial issue,

it would have become apparent that consideration of these factors would, at the very least, have

raised serious questions. For example, the Debtors had no risk that Broadwall's position in the

Adversary Proceeding would prevail for the reason that that State Court Ruling finally disposed of the issue, and the Rooker-Feldman Doctrine bars the Bankruptcy Court from revisiting that ruling.[13] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).[14]

To add to the absurdity of this "Settlement" put before the Bankruptcy Court, the consequence of Broadwall prevailing in the Adversary Proceeding (which could have been quickly accomplished by the Debtors consenting to entry of a judgment) would be that the Debtors would be obligated to close the purchase of the Properties at $13 million --- $2.75 million *more* than they will receive under the "Settlement" embodied in the Stipulation and Sale Agreement. To add to these eyebrow-raising circumstances: (i) Barnett/Broadwall – which are not creditors or equity-holders of the Debtors – get a $2 Million gift, (ii) M. Muschel, an insider with a duty to the Estates, gets a $750,000 personal benefit to the detriment of the Estates, and (iii) the Debtors lose at least $2.75 Million for the withdrawal of frivolous litigation, that, even if it *lost* would get the Estates an additional $2 Million.

Thus, it is submitted that had the Bankruptcy Court scratched the surface of the Settlement, it would have readily seen that the Settlement was neither fair and equitable, nor within any range of reasonableness. But, in any event, no evidence or discussion was presented as to the relative merits of either Broadwall's or the Debtors' position in the Adversary Proceeding, the nature of any litigation or any supposed benefits. Thus the Court below failed to

---

[13] Indeed the Bankruptcy Court specifically referred the issue of whether Broadwall could require the Debtors to close under the Option Contract to the State Court because it was the proper court to rule on this issue of New York contract law. It would be rather odd, to say the least, for the Bankruptcy Court to now – as Broadwall urges – decide to disregard the State Court Ruling. The complaint in the Adversary Proceeding concedes as much by taking the truly bizarre position that the Bankruptcy Court should adopt the decision of the Supreme Court – which it liked – but disregard the reversal thereof by the Appellate Division.

[14] Moreover, there were no disputed questions of fact, and this clear legal proposition was ripe for a narrow, summary judgment-type of hearing.

carry out its role under Rule 9019. *See In re Ira Haupt & Co.*, 304 F. Supp. at 934; *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. at 362; *In re Telcar Group, Inc.*, 363 B.R. at 352-53, supra pp. 11-12. Under these circumstances, it was an abuse of discretion to grant the 9019 Motion.

**B.      The Stipulation and the Sale Were Not the Result of Arms Length Bargaining (Iridium Factor "h")**

An important factor that the Bankruptcy Court must consider is the "the extent to which the settlement is truly the product of arms' length bargaining and not the product of fraud or collusion." *In re Iridium Operating LLC*, 478 F.3d at 462. Non-arms-length transactions must receive heightened scrutiny and are highly disfavored. *See In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997) (stating non-arms-length deals, like a sale to an insider, "are necessarily subjected to heightened scrutiny because they are rife with the possibility of abuse.") (citation omitted). Concern about arm-length bargaining is especially important when dealing with insiders. In *In re Matco Electronics Group, Inc.*, the court denied a motion for approval of a settlement under Rule 9019, in part, because the key insider was tainted by dual allegiance – he signed for the Debtor, but he also was a shareholder of the other party to the agreement. *In re Matco Elecs. Group, Inc.*, 287 B.R. 68, 76 (Bankr. N.D.N.Y. 2002). In addition, the insider was to receive a release under the settlement. This led the court to determine that these red flags raise serious questions as to whether the settlement was an arms-length transaction and denied approval *Id.*, at 78; *see also In re Present Co.*, 141 B.R. 18, 24 (Bankr. W.D.N.Y. 1992) (denying a 9019 motion because movant "cannot persuade me to approve this compromise over the objection of the only appearing non-insider parties so long as insiders limit the information available to those parties.").

Here, again, the 9019 Motion completely failed to address this important factor, notwithstanding the manifest split of allegiances: M. Muschel's duty to the Estates[15] and M. Muschel's negotiating for himself a direct pecuniary benefit, which caused a dollar-for-dollar reduction in the amount to be received by the Estates, coupled with (i) M. Muschel's apparent prior financial relationship with Barnett (discussed below), (ii) M. Muschel's (and Barnett's) receipt of general releases, and (iii) the lack of any effort to market the Properties to obtain a higher price. At the Hearing, the sole inquiry by the Bankruptcy Court was to ask the opinion M. Muschel's counsel, while otherwise disregarding the strong *indicia* that the Settlement was not the result of arms-length bargaining. Counsel to M. Muschel's explanation, however, only worsened the non-arms-length problem: "the amount was…based on a friendly transaction that was done years ago" and that the loan forgiveness "was [a] lot easier to give [M. Muschel] credit as part of the transaction." Tr. at 41-42. By calling the M. Muschel/Barnett transaction "friendly," M. Muschel's counsel virtually confirmed the non-arms-length nature of the transaction, and the reference to "done years ago" indicated a long-standing relationship.[16] Thus, counsel's statement worsened the non-arms-length problem, and it was an abuse of discretion for the Bankruptcy Court to view this testimony as indicating part of a good faith, arm's length transaction deal.[17]

---

[15] M. Muschel, whether authorized or not, purports to act on behalf of the Debtors. In assuming that role as a "manager" of a debtor-in-possession, he has a fiduciary duty to the bankruptcy estate, which includes a duty to maximize the value of the estate. *In re Ridgemour Meyer Props., LLC,* 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008); *In re Centennial Textiles, Inc.,* 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998).

[16] Arguably, this "friendly" transaction functionally renders Barnett an insider of the Debtors. *See In re A. Tarricone, Inc.,* 286 B.R. 256, 263-64 (Bankr. S.D.N.Y. 2002) (holding that relationship between creditor and insider can turn creditor into non-statutory insider).

[17] Also telling was M. Muschel's counsel's silence on the one matter that might have helped, *i.e.* that the Properties were marketed in order to assure that the best price was obtained.

It was thus manifest that the Settlement was the antithesis of "arms-length," further establishing that approval thereof was an abuse of discretion.

### C.     The Stipulation Includes Expansive Releases for Non-Debtors (Iridium Factor "g")

A further factor that the Bankruptcy Court must consider is "the nature and breadth of releases to be issued as a result of the settlement." *In re Iridium Operating LLC*, 478 F.3d at 462. As part of the Stipulation, both Barnett and M. Muschel receive broad releases of all claims. The 9019 Motion failed to address this factor. In approving the Stipulation, the Bankruptcy Court nevertheless approved the release of these non-debtor third parties -- Barnett and M. Muschel -- without even considering or addressing the need for or propriety of or legality of those releases.

In *In re Matco Electronics Group, Inc.*, the Court denied a motion to approve a settlement under Rule 9019 between the debtor and other party to the transaction. 287 B.R. at 79. The *Matco* settlement not only included releases for the debtor and the other party, but also included releases for the individuals who signed on behalf of the debtor and the other party, respectively. The *Matco* Court believed that the releases for the two individuals was a "red flag" due to a lack of an explanation for the release as well as the lack of an explanation as to what consideration the two individuals provided to receive these releases. *Id.* at 76.

Although the issue was raised by A. Muschel, the Bankruptcy Court did not question or consider the releases. This failure is another example the Bankruptcy Court' abuse of discretion in approving the 9019 Motion.

### D.     The Bankruptcy Court Disregarded the Interests of Creditors and Equity-Holders (Iridium Factor "c")

A factor in determining whether the Stipulation is fair and reasonable is whether the Stipulation is in "the paramount interests of the creditors, including the proportion of creditors

who do not object to, or who affirmatively support, the proposed settlement." *In re Iridium Operating LLC*, 478 F.3d at 462.

The debtor in possession has a duty to its bankruptcy estate. *See Commodities Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'") (citing *Wolf v. Weinstein*, 372 U.S. 633, 651 (1963)). Where value is available to equity-holders, the debtor in possession and its counsel must guard their interests as well, and, for purposes of this factor, it is submitted that, where, as here, value is available for equity, the "paramount interests" include those of the equity-holders, such as R. Muschel and A. Muschel. *See In re West Delta Oil Co.*, 432 F.3d 347, 356 fn. 29 (5th Cir. 2005) ("the creditors were to have been paid fully, the bankruptcy court should have been concerned with maximizing the payment to the equity holders"); *In re Philadelphia Athletic Club, Inc.*, 15 B.R. 60, 62 (Bankr. E.D. Pa. 1981) ("Although the primary purpose of the bankruptcy courts is to preserve the debtor's estate in order to protect its creditors, where, as here, the rights of all creditors are fully protected, it is incumbent on the court to seek to protect the interests of equity holders as well."). In light of his decision to abandon the interests of the Estates by negotiating a very substantial pecuniary benefit for himself, it is submitted that M. Muschel's interests should be given little or no weight.

At the Hearing, however, there were numerous other concessions by the Debtors' counsel that only M. Muschel's interests, rather that the Estates' or the interest-holders', were at stake. Tr. at 37 ("[T]he only party-in-interest concerning the issue is Mordechai Muschel, who[se] been awarded the property.). *See also* Tr. at 7, 8, 34, 37. Consistent with this, Debtors' counsel made

numerous statements to the effect that it made no difference how much M. Muschel negotiated for the sale of the Properties.[18]

Based upon the foregoing, it is submitted that (i) the interests of the Estates – which includes consideration of the interests of A. Muschel, R. Muschel and the Decedent Estate – were improperly disregarded, and (ii) the sole focus on the interests of M. Muschel constituted clear error.

It appears in this respect that the Court below may have been persuaded by the oft-repeated justification proffered at the Hearing by Debtors' counsel that, as a result of the Disputed Ruling, it made no difference how much the Estates received for the Properties, and thus, the Court should disregard the several objective indicators that the Properties were worth at least $13 Million (including relatively clear letters of intent at $13 Million and $13.5 Million, the fact that based on the Dismissal Motion, the Debtors were prepared to close at $13 Million, and the fact that Broadwall had been litigating for years to compel the Debtors to close at $13 Million).

It was clear error, however, to rely on the Disputed Ruling without reviewing the actual Award, since the Award would contain the full agreement among the brothers and the Decedent Estate. The Debtors, however, did not put the Award before the Bankruptcy Court.

Moreover, in any event, there is nothing in the Disputed Ruling that justifies M. Muschel, as purported manager of the Debtors, abandoning his fiduciary duties to, among other things, maximize the value of the Estates.

---

[18] Bankruptcy jurisprudence consistently holds that the debtor-in-possession or trustee is duty bound to maximize the value received in the disposition of assets of a bankruptcy estate. *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998) ("A duty is imposed upon the trustee to maximize the value obtained from a sale, particularly in liquidation cases."); *In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995) ("When a debtor or trustee conducts a sale under 363(b), it has an obligation to maximize revenues for the estate."); *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.").

The foregoing discussion illustrates the mischief of departing from the well-established legal framework governing bankruptcy practice. Having insisted on relief under Rule 9019 (as opposed to a narrower request to simply dismiss the cases), the Debtors cannot then ask the Court to disregard the applicable standards, nor should the Court have accepted such invitation. *See OptInRealBig.Com, LLC,* 345 B.R. 277, 291 (Bankr. D. Colo. 2006) (finding Rule 9019 not necessary because settlement was to occur post-dismissal, but when faced with request for Rule 9019 relief, court is required to evaluate Rule 9019 standards).

## II. THE 9019 MOTION FAILS TO SET FORTH "CAUSE" TO DISMISS THE BANKRUPTCY CASES

The Debtors' notice of the 9019 Motion does not so much as mention the request for dismissal, and the 9019 Motion only briefly mentions that dismissal relief is being requested on the last page. Moreover, the 9019 Motion is devoid of any mention of the applicable statute or any of the standards thereunder. Similarly, the Bankruptcy Court never addressed the applicable standards for dismissal of the Debtors' cases.[19] Despite the lack of a factual basis for relief or an evaluation of the applicable standards, the Bankruptcy Court nevertheless dismissed the Debtors' cases, as well as the Adversary Proceeding.

Section 1112(b) provides, in relevant part, the following:

> [O]n request of a party in interest and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall . . . .dismiss a case under this chapter . . . if the movant establishes cause.

11 U.S.C. § 1112(b)(1).

---

[19] Further, although the Debtors previously filed the Dismissal Motion, such motion was based on different factual circumstances and the Debtors did not renew the Dismissal Motion based on the changed factual circumstances.

Section 1112(b)(4) of the Bankruptcy Code lists sixteen non-exclusive examples of "cause."[20]  In evaluating cause, the Bankruptcy Court is required to thoroughly review the record before it to determine whether dismissal is appropriate. *See In re Ridgemour Meyer Props., LLC,* 413 B.R. 101 (Bankr. S.D.N.Y. 2008) (denying debtor's request to dismiss case after thorough review suggested that dismissal was not in the best interest of creditors).  Rather than thoroughly evaluating the record before it, the Bankruptcy Court rubber stamped the dismissal despite the fact that the factual record did not support cause to dismiss the Bankruptcy Cases based on any of the listed possible causes to dismiss found in section 1112(b)(4).

In addition to the lack of any record showing "cause", the Debtors did not, other than bald, non-evidentiary assertions that all creditors would be paid, adequately describe how claims would be handled post-dismissal, and why dismissal is preferable to having such claims resolved by the Bankruptcy Court. *See In re Ridgemour Meyer Props., LLC,* 413 B.R. at 114-15.  For example, the Debtors do not address what the administrative costs of the Estates were or how they would be paid.[21]  In total, the record is lacking in information or basis to support dismissal

---

[20] Section 1112(b)(4) provides, in pertinent part, that "For purposes of this subsection, the term "cause" includes— (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors; (E) failure to comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors convened under section 341 (a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor; (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; (K) failure to pay any fees or charges required under chapter 123 of title 28; (L) revocation of an order of confirmation under section 1144; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan; (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition."

[21] For example, by the time of the Hearing, the Debtors' counsel had been toiling through apparently nine years of proceedings — including extensive litigation.  Based upon the docket maintained by the Clerk of the Bankruptcy Court, applications were filed to approve the retention of general counsel and special litigation counsel to the Debtors, but no orders approving such retentions appear on the docket, however.  In addition, the Debtors made no

of the Debtors' bankruptcy cases.  Accordingly, the Bankruptcy Court erred in dismissing the

Bankruptcy Cases.

**III.     *THE BANKRUPTCY COURT ERRED IN EXERCISING ITS JURDISDICTION TO APPROVE THE SALE WITHOUT CONSIDERING SECTION 363 OF THE BANKRUPTCY CODE***

Despite the fact that the Movants solely sought relief under Bankruptcy Rule 9019, as the

settlement included the sale of the Properties, which was outside the Debtors' ordinary course of

business, the Movants were required to seek relief under section 363(b) of the Bankruptcy Code.

*In re Moore,* 608 F.3d 253, 265 (5th Cir. 2010) (holding that because the proposed compromise

"was a disposition of estate property" the bankruptcy court was obligated to consider "whether

an auction and 363 sale were appropriate"); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d

Cir. 1996); *Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson

Entertainment Group, Inc.)*, 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003).  Section 363(b)(1) of the

Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease,

other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In

applying this section, courts in the Second Circuit and elsewhere have required that any such use,

sale or lease be based upon the sound business judgment of the debtor-in-possession or trustee.

*See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge determining a §

363(b) application must find from the evidence presented a good business reason to grant such

application);  *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d

1063, 1071 (2d Cir. 1983) (same).

---

[21] (cont.) disclosure of the amount of those fees and disbursements or who would be paying them.  *See In re Lar Dan Enters., Inc.*, 221 B.R. 93, 95 (Bankr. S.D.N.Y. 1998) (requiring disclosure of compensation paid to debtor's counsel by third party).  Considering the length of time and amount of services, it is quite conceivable that those fees could consume much, if not all, of the proceeds of the sale of the Properties.

Although the Bankruptcy Court did not even assess whether this sale was a good business decision, the facts suggest that it was not. In addition to the numerous *indicia* discussed above indicating that the sale of the Properties was a non-arms-length transaction for well less than the value of the Properties, and that it was motivated by improper insider dealings and constituted a breach of fiduciary duty, there is no indication that the Debtors attempted to market or sell the Properties to parties other than Barnett. Nearly all courts require that assets must have been properly marketed and either that other parties have a right to bid or that there are other clear indications that efforts have been made to obtain the best price reasonably available. *See In re Boston Generating, LLC*, 440 B.R. 302, 323 (Bankr. S.D.N.Y. 2010); *In re Nightlife Enters., L.P.*, 2010 WL 5265128, at *1 (Bankr. S.D.N.Y. July 26, 2010) (finding that property appropriately marketed prior to approving sale). The record here shows, however, that M. Muschel, purportedly acting on behalf of the Debtors, negotiated solely with Broadwall. *See* Tr. at 13, 23, 34, 47. This is exacerbated by the fact that A. Muschel included two clean letters of intent[22] for prices well in excess of the price obtained in the Stipulation, and the Option Contract which Broadwall had fought so hard to enforce provides for a price of $13 Million.[23] It is thus

---

[22] These letters were for prices of $13 Million and $13.5 Million. Although not binding, they were not saddled with any problematic contingencies. *See* Objection and Request for Adjournment by Aaron Muschel to the Joint Motion for Approval of Proposed Stipulation and Order Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code, Exhibit A, Case No. 04-13810, Dkt. No. 221; Case No. 05-10616, Dkt. No. 128; Case No. 05-10617, Dkt. No. 127; Adv. Pro. No. 06-01788, Dkt. No. 57. *See also* Tr. at 20, 23, 39, 43, 48.

[23] To justify the reduction, Broadwall argued that the current sale and the Option Contract differ because in the current Broadwall is purchasing the Properties "as is". Tr. at 39, 48. However, pursuant to Section 5.01 of the Option Contract, Broadwall was to purchase the Properties "as is" subject to matters not germane, *i.e.*, sections 7.01 (Responsibility for Violations), 8.04 (Destruction, Damage or Condemnation), and 9.04 (Removal of Fixtures). M. Muschel and Broadwall used the lack of a Certificate of Occupancy as an example of an item that would justify a decrease in the Option Contract's purchase price. Tr. at 39, 48. However, nothing in the Option Contract, including section 10.1 of the Option Contract entitled Sellers Closing Obligations, would require the Debtors to obtain a Certificate of Occupancy prior to closing on the Option Contract. As the Bankruptcy Court was not presented with any other justification for the reduced price, and in fact was presented with evidence of a higher fair market value based on two letters of intent in the amount of $13 million and $13.5 million, the Bankruptcy Court abused its discretion by approving the Stipulation.

clear that the sale was not a proper exercise of business judgment, and, it was error to approve such a sale.[24]

## IV.   THE DEBTORS LACKED AUTHORITY TO ENTER INTO THE STIPULATION

Based upon the recitals of the Stipulation, the Decedent Estate owns all of the interest in Bram Will and owns a one-quarter interest in WM LLC.  Each Muschel brother also owns a one-quarter membership interest in WM LLC.   Yet, despite this ownership structure, the Stipulation was only signed by M. Muschel and nothing was submitted by the Debtors to show the authority of M. Muschel to enter into either document.[25]  Indeed, the 9019 Motion itself was not authorized.[26]  The Decedent Estate needed to approve the Stipulation, but M. Muschel cannot act alone for the Decedent Estate.

As WM LLC is owned equally by the Decedents Estate and the three brothers, the applicable LLC agreement must be consulted for the means by which the LLC acts,[27] but no evidence was provided that M. Muschel had authority to act on behalf of WM LLC, whether as managing member or in some other capacity.  At the Hearing, the Debtors' counsel stated that the signature of at least two executors was needed (Tr. at 5), and each Muschel brother individually owns a portion of WM LLC in addition to the Decedent Estate.  However, only M.

---

[24] Although the Movants' motion is cast as a Rule 9019 Motion, it clearly seeks approval of the sale to Barnett/Broadwall as a crucial part of the relief.  Moreover, the Order, in the first decretal paragraph, approves the "Settlement", which term is inclusive of the Stipulation.  Moreover, the third decretal paragraph explicitly refers to "the sale of the Broadway Properties in accordance with the terms of the Stipulation...".

[25] Once A. Muschel raised this issue, it became incumbent upon the Debtors to submit the applicable LLC documents, but no such documents were submitted.

[26] For the purpose of showing that the Stipulation and sale agreement were authorized, the Debtors attached to their reply papers a letter from R. Muschel.   That letter, however, was dated June 17, 2010, which is four months after the Stipulation was executed, and only authorized the Debtors' counsel — not M. Muschel — to sign a stipulation to dismiss the Debtors' bankruptcy cases and to transfer the ownership interests in the Debtors to M. Muschel.  The Stipulation, however, is far broader; it provides for the sale of the Properties and various releases; well beyond the scope of R. Muschel's purported grant of authority.

[27] For example, an LLC may have a managing member to act for the company, or the LLC may need to act by the approval of a majority of the LLC's membership interests.

Muschel has signed the Stipulation on behalf of the Debtors.  Considering the significant

questions regarding the lack of authority, the Bankruptcy Court abused its discretion in

approving the Stipulation.

## CONCLUSION

For all of the reasons set forth above, A. Muschel respectfully requests that this Court

enter an order (i) reversing the Order, (ii) remanding the issue to the Bankruptcy Court for

proceedings consistent with such reversal, and (iii) granting such other and further relief as to the

Court may appear just.

Dated: New York, New York
      March 14, 2011

                    Respectfully submitted,

                    GOLENBOCK EISEMAN ASSOR BELL &
                     PESKOE LLP
                    437 Madison Avenue
                    New York, New York 10022
                    (212) 907-7300
                    *Counsel to Aaron Muschel*

                    By                        
                       Jonathan L. Flaxer