```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:

BROADWALL AMERICA, INC.                    11 CV 554 (AKH)

------------------------------x
                                           New York, N.Y.
                                           May 5, 2011
                                           11:15 a.m.
Before:

              HON. ALVIN K. HELLERSTEIN,

                                           District Judge

                    APPEARANCES

GOLENBOCK, EISMAN, ASSOR, BELL & PESKOE
     Attorneys for Appellant Aaron Muschel
BY:  JONATHAN FLAXER

WESTERMAN, BALL, EDERER, MILLER & SHARFSTEIN
     Attorneys for Appellee Broadwall America
BY:  PHILIP CAMPISI, JR.

BACKENROTH, FRANKEL & KRINSKY
     Attorneys for Appellees Bram Will El and William Muschel
BY:  ABRAHAM BACKENROTH
```

1        (Case called)
2        MR. FLAXER: Good morning, your Honor, Jonathan Flaxer
3    of Golenbock, Eiseman, Assor, Bell & Peskoe, counsel for the
4    Appellant Aaron Muschel.
5        MR. CAMPISI: Philip Campisi from Westerman, Bali,
6    Ederer, Miller & Sharfstein for Appellee Broadwall America.
7        MR. BACKENROTH: Abraham Backenroth, Backenroth,
8    Frankel & Krinsky on behalf of Appellees Bram Will El and
9    William Muschel, Debtors.
10       THE COURT: Thank you.
11       Mr. Flaxer, you're the appellant.
12       Who is the respondent? Mr. Campisi?
13       MR. CAMPISI: Both.
14       THE COURT: Why don't you tell me what is going on. I
15   can't figure this case out. We have a bankruptcy proceeding
16   and we have a Beth din. The Beth din has issued various orders
17   purporting to dispose of the assets of the William Muschel
18   Estate.
19       MR. BACKENROTH: That's correct.
20       THE COURT: But only the modification is in the
21   record, the previous orders are not in the record, and it's
22   very hard to figure out what happened. The Beth din seems to
23   reserve for itself all kinds of future rights and obligations
24   with regard to distribution, so we don't have a final order.
25   In fact, it modified the previous order, we didn't have a final

1  order then.  How a Beth din can order a disposition of assets
2  belonging to a debtor in possession is beyond me.  What
3  happened in the bankruptcy court that led up to the stipulation
4  doesn't make sense to me.
5          MR. BACKENROTH:  Your Honor --
6          THE COURT:  I'm totally confused.
7          MR. BACKENROTH:  Perhaps let me clarify.
8          The Beth din dealt with the issue of the resolution of
9  the division of properties between the three brothers.  There
10 are other properties beside the property in Chapter 11 which
11 was allocated to other brothers.  And under the original
12 decision, which unfortunately is not in the record but I don't
13 think there's any dispute because I want to tell you the only
14 difference between the first decision and the second is the
15 question of how much money Mordechai Muschel has to pay to his
16 brothers for getting this property.  The original was four and
17 a half million dollars.
18         THE COURT:  That seems to have been adjusted because
19 the decline in real estate values.
20         MR. BACKENROTH:  Exactly.
21         THE COURT:  Why that can override any bankruptcy
22 proceeding, I don't understand.
23         MR. BACKENROTH:  It has nothing to do with the
24 bankruptcy proceeding, because what happened over there is that
25 the creditors are relatively de minimis.  Once it was decided

1  or agreed that Mordechai Muschel would get this property, and
2  that was in the original award and in the modification of
3  award, so there was never an issue that Mordechai Muschel would
4  be the owner of this property. Once that was determined, he
5  then went into a contract to sell the property to Barnett and
6  to dismiss the proceedings. The creditors would be paid in
7  full, so there's no issue concerning creditors not getting
8  paid.
9       The only issue that could have been raised was whether
10 or not the purchase price would affect the allocations between
11 the brothers. And the answer to that is no. It was made very
12 clear on the record that there would be no determination as to
13 value of this property. If the property is worth $11 million
14 or $20 million or $8 million, it would not be determined based
15 upon this $11 million contract that Mordechai Muschel was
16 selling the property to Mr. Barnett.
17      So what in essence happened is as follows: We had an
18 arbitration award by the Beth din that awarded property to
19 Mordechai Muschel. That was pursuant to a stipulation between
20 the three parties. There was never a question that Mordechai
21 Muschel is getting the property.
22      THE COURT: There were three bankruptcy proceedings
23 brought by -- who are the debtors? One was William Muschel,
24 LLC, and another one was --
25      MR. BACKENROTH: Bram Will El, LLC.

| | |
|---|---|
| 1 | THE COURT: Whose company is that? |
| 2 | MR. BACKENROTH: All of those companies were companies |
| 3 | that were owned either by the brothers or by the father's |
| 4 | estate. |
| 5 | THE COURT: It's a family dispute. How did it get |
| 6 | into bankruptcy? |
| 7 | MR. BACKENROTH: It got into bankruptcy because there |
| 8 | was originally an option agreement contract of sale to sell the |
| 9 | property for $13 million, which we believe was questionable and |
| 10 | we believe that we could challenge that and undo that. |
| 11 | THE COURT: So the creditors were the other brothers? |
| 12 | MR. BACKENROTH: No, the other brothers were ownership |
| 13 | interests, in other words, they are the equity interest. |
| 14 | THE COURT: Who were the creditors? |
| 15 | MR. BACKENROTH: There were some small creditors. |
| 16 | There was a mortgage at the time that was satisfied subsequent |
| 17 | out of another property, so there were some creditors. And |
| 18 | potentially the contract vendee who signed the contract was |
| 19 | potentially a creditor as well. |
| 20 | THE COURT: So there should be no bankruptcy |
| 21 | proceeding at all if there are no creditors. |
| 22 | MR. BACKENROTH: Exactly the point. As soon as the |
| 23 | issue concerning the option contract was resolved, there's no |
| 24 | reason for the bankruptcy. |
| 25 | THE COURT: So the bankruptcy should disappear, and |

the only dispute would be that which is taken up by the Beth din, and the question is if one of the parties doesn't want to conform to the order and a petition to compel the award.

MR. BACKENROTH: Exactly. In fact, motions have been made to the state court, as far as I understand, to confirm the arbitration decision, and I think there was a cross motion made.

THE COURT: We're here on appeal from the bankruptcy. So let me ask you, Mr. Campisi --

MR. CAMPISI: Yes, your Honor.

THE COURT: -- why do you want to remand the case?

MR. CAMPISI: I do not want to remand it.

THE COURT: What do you want?

MR. CAMPISI: I'm here for Broadwall.

THE COURT: I meant to talk to Mr. Flaxer, excuse me.

Mr. Flaxer, you want to have the case remanded?

MR. FLAXER: Correct, your Honor.

THE COURT: Why do you care if there are no creditors?

MR. FLAXER: Your Honor, there are creditors.

THE COURT: Who do you represent?

MR. FLAXER: I represent Aaron Muschel.

THE COURT: Is Aaron a creditor?

MR. FLAXER: No, Aaron is an equity holder. But the rule in bankruptcy -- and we cited extensive case law to this effect -- is that if the assets of the estate are sufficient to

1   pay all the creditors -- which, by the way, is not at all clear
2   here, based on this record, but if that's the case, then the
3   bankruptcy case gets run to the benefit of the equity holders,
4   and the managers of the debtor in possession have a fiduciary
5   duty to the equity, and we are equity.
6             THE COURT:  So were you a party to the Beth din?
7             MR. FLAXER:  Yes.
8             THE COURT:  So why doesn't the Beth din disposition
9   control?
10            MR. FLAXER:  A couple reasons, and I think your Honor
11  is right at the nub of what this is about.
12            The proponents of the motion before the bankruptcy
13  court that led to the order that we are appealing -- and I made
14  this point a few times in the bankruptcy court -- if their
15  position was that the Beth din ruling -- which, of course,
16  nobody has actually seen this in the record, except for one
17  small amendment -- but if that --
18            THE COURT:  Modification order, you mean.
19            MR. FLAXER:  Correct.
20            If that whole Beth din --
21            THE COURT:  The modification order says that your
22  brother Rubin gets a million something, instead of four million
23  something, but it doesn't say anything about you, about your
24  client --
25            MR. FLAXER:  Your Honor, there's a few issues here.

1          THE COURT:  What do you care how much Mordechai pays
2  to Ruben?  It's not your business.
3          MR. FLAXER:  Your Honor, my client is a beneficiary of
4  the will.  There were three, and it gets split evenly under the
5  will.  That will is not in the record, but I think everybody
6  would concede that, but I think the will needed to be in the
7  record.  Then you have a comprehensive stipulation signed by
8  each of the brothers that gets approved by the Beth din.
9  That's not before the Court either.  But we believe that
10  basically what's going on here is that at the end of the day
11  the three brothers share what is left in the estate.  If this
12  property gets sold, as it should be sold for 13 or 13 and a
13  half million, its real market value, then that excess money is
14  going to pay expenses of the decedent's estate --
15          THE COURT:  So your grievance is that Mordechai is
16  going to be able to pocket the $11 million and not share it
17  with you.  Is that it?
18          MR. FLAXER:  It's that, but there are so many layers
19  of problems here I could go on for an hour.
20          THE COURT:  Mordechai, instead of paying over $11
21  million for distribution --
22          MR. FLAXER:  Well --
23          THE COURT:  -- he's out of pocket $1 million and takes
24  11, so he has a cool profit of $10 million --
25          MR. FLAXER:  If Broadwall --

1           THE COURT:  -- at your expense.

2           MR. FLAXER:  If Broadwall --

3           THE COURT:  Listen, is that it?

4           MR. FLAXER:  Not quite, but it's close.  You're on the

5   right track.

6           Broadwall has cut into -- actually it's not even them,

7   its principal, who has an insider relationship with Mordechai,

8   cut a deal that lets Mordechai pocket a personal benefit, he

9   gets off the hook of $850,000 he owes to Mr. Barnett.  Barnett

10  has a lawsuit against Mordechai, Mordechai gets off that

11  lawsuit, and then Mordechai gets off all the other claims that

12  are never --

13          THE COURT:  From the point of view of Judge Peck, who

14  has his hands full with bankruptcy proceedings, why should he

15  mess around with an interfamily dispute that more belongs in

16  the Surrogate's Court or in the Supreme Court than in

17  Bankruptcy Court?

18          MR. FLAXER:  Here's the reason, they asked the

19  Bankruptcy Court to approve a settlement under Rule 9019.  They

20  didn't have to do that.  All they had to do was say:  Your

21  Honor, all this belongs in the State Court or in the Beth din

22  or somewhere else, dismiss the case.  They can go and, if they

23  want to close the deal, fine, do whatever you want to do.

24          THE COURT:  That's what Judge Peck should have done,

25  should have dismissed the bankruptcy case and sent your dispute

1    elsewhere, but he couldn't because he has the dispute, and once
2    he has jurisdiction -- I'm not aware of this equity
3    jurisdiction, but if he has jurisdiction, he has to deal with
4    it.
5              MR. FLAXER:  Well, here's the thing.  Once the
6    proponents of this motion go to Judge Peck and ask for more
7    than a simple dismissal, once they invoke the bankruptcy
8    jurisprudence of Rule 9019, now Judge Peck has to put on his
9    hat as a bankruptcy judge and abide by the well developed law
10   under Rule 9019.
11             The settlement, in quotes, although it's anything but
12   a settlement, doesn't pass muster any of the standards under
13   Rule 9019.  It fails every one of them.  They didn't have to
14   ask for that relief, but they did.  Once they asked Judge Peck
15   for that relief, Judge Peck, in our view, is required to put on
16   his hat as a bankruptcy judge and rule on that motion in
17   accordance with the developed standards under Rule 9019.
18             THE COURT:  Can he follow a duly convened arbitration
19   panel in dealing with an interfamily dispute dealing with the
20   various parties?
21             MR. FLAXER:  Depends on what relief is being asked of
22   him.
23             THE COURT:  The relief is the very thing that he has
24   to decide.  He has to decide what is the fair and equitable
25   distribution among the brothers and their companies, and that

1 has been the subject of the arbitration panel.

2 MR. FLAXER: I'm going to disagree with you on that to
3 the following extent: As a bankruptcy judge, he has to rule on
4 what's in the best interest of the bankruptcy estates of those
5 entities.

6 THE COURT: But there are no creditors.

7 MR. FLAXER: That's not true.

8 THE COURT: Who are the creditors?

9 MR. FLAXER: There was a contractor who also opposed
10 the settlement who is owed a six figure sum. We understand,
11 although we don't know, that there are taxes that are unpaid,
12 and there's no disclosure, and this is another big problem --

13 THE COURT: There's lots of equity to take care of the
14 creditors.

15 MR. FLAXER: There's no way to know that. But there's
16 no disclosure of what the legal fees are. All legal fees run
17 up by counsel to a debtor in possession have to be disclosed to
18 the bankruptcy court and have to make a fee application. These
19 cases have been going on for years.

20 THE COURT: Has Judge Peck made a finding that there
21 is equity in the estate?

22 MR. FLAXER: No.

23 THE COURT: Doesn't that fail, Mr. Backenroth?

24 MR. BACKENROTH: That's not correct. The $11 million
25 purchase price is more than adequate to pay anything.

1            THE COURT:  Has Judge Peck made that finding?

2            MR. BACKENROTH:  It was not --

3            THE COURT:  It may be obvious, but did he make the

4    finding?

5            MR. BACKENROTH:  I don't know if he made that actual

6    finding, but that was what was presented to the judge because

7    Judge Peck was on top of this case for many years, was fully

8    aware of the fact that the only thing holding up this case was

9    an adversary proceedings in which the contract vendee was

10   challenging the right to buy it for $13 million.  That was the

11   reason for the settlement.  Otherwise, we would simply dismiss

12   the proceedings and that would have been the end of it.  But in

13   order to resolve that adversary proceedings, it was agreed by

14   Mordechai Muschel, who was getting the property both under the

15   original award and then the modified award, that he would sell

16   this property to Barnett for the $11 million.

17           THE COURT:  Gentlemen, I feel that this is an

18   inadequate record on many, many different scores for me to make

19   any intelligent rulings.  There's no finding whether there is a

20   creditor in this estate that could be agreed.  There's no

21   finding as to the disposition of the property in terms of its

22   fairness.  There's been no adjudication as to the fairness of

23   the stipulation of dismissal.  We have the property, the issue

24   of whether or not there is authority to have engaged in the

25   transactions and to approve the settlement.  All these issues

1     should have been decided by Judge Peck, then I would have an
2     ability to determine an appeal.
3             So the bankruptcy appeal is granted.  The case is
4     remanded to Judge Peck to make appropriate findings on all the
5     issues I mentioned and others that are apparent as well.
6             MR. FLAXER:  Thank you, your Honor.
7             THE COURT:  Thank you, gentlemen.
8                                o0o